[No. A115717. First Dist., Div. Five. Dec. 16, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOTT EMERSON FELIX, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II., V., and VI.

608

**Counsel**

Mazur & Mazur, Janice R. Mazur and William E. Mazur, Jr., for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Moona Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**DONDERO, J.**[*]—Scott Emerson Felix challenges his civil commitment after a jury trial to an indeterminate term of confinement as a sexually violent predator pursuant to the Sexually Violent Predators Act as amended on September 20, 2006. The jury trial took place during October 2006. We affirm.

### Background

In 1982, Scott Emerson Felix was convicted of three counts of false imprisonment (Pen. Code, § 236) against three separate victims, two counts of oral copulation and one count of rape against two additional victims, and

---

[*]Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

one count of assault with the intent to commit rape against a sixth victim. The crimes were committed in April, October, and September 1982. In each case, Felix approached strangers on the street or in other public places, used threats or force against them, and attempted to or succeeded in forcing them to perform sexual acts on him. For these crimes, Felix was sentenced to 19 years four months in prison.

Felix was released on parole sometime before 1993. He had numerous parole violations between October 1993 and December 1995. In May 1994, his parole was revoked for six months. He had been charged with several crimes, including assault and battery, possession of a dangerous weapon, possession of stolen property, and threats or harassment. In March 1995, Felix's parole was revoked for one month, based on a curfew violation, dishonesty, and noncooperation. In August 1995, Felix was arrested for stalking, but his parole was continued. In March 1996, Felix's parole was revoked for nine months for being drunk in public.

While Felix was in custody for the March 1996 parole revocation, the People filed a petition to commit him as a sexually violent predator (SVP) pursuant to the Sexually Violent Predator Act (SVPA), Welfare and Institutions Code section 6600 et seq.[1] Felix was found to be an SVP, was committed to a two-year term, and, pursuant to subsequent petitions to extend his commitment, was ultimately committed through July 22, 2002.

The People filed a petition to extend Felix's commitment from July 22, 2002, to July 22, 2004 (2002 petition). A trial still needed to be held on that petition when July 22, 2004, was approaching, so the People filed a second petition to extend Felix's commitment from July 22, 2004, to July 22, 2006 (2004 petition). The 2002 and 2004 petitions were consolidated in 2004. A trial had still not been held on the consolidated petitions as the expiration date of July 22, 2006, was approaching, so the People filed a third petition to extend Felix's commitment from July 22, 2006, to July 22, 2008 (2006 petition).

As of July 2006, the consolidated 2002 and 2004 petitions had been assigned to Judge Mary Morgan for trial. When the 2006 petition was filed, Felix challenged Judge Morgan pursuant to Penal Code section 170.6, and the

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

For purposes of clarity, we refer to provisions of the former SVPA (in effect before the Sept. 20, 2006 amends.) in the past tense as "former sections" and provisions adopted by the September 2006 amendments in the present tense as "sections," even though those amendments have been superseded by an initiative adopted by the voters in November 2006 (Prop. 83). Most of the provisions of Senate Bill No. 1128 (2005–2006 Reg. Sess.) and the initiative are the same; where they materially differ, we note the difference in a footnote.

2006 petition alone was assigned to Judge James J. McBride. A probable cause hearing was held on the third petition and probable cause was found to exist. The 2006 petition was eventually scheduled to go to trial October 6, 2006.

On August 1, 2006, Felix filed a motion to dismiss the 2006 petition on the ground of "judicial estoppel." He argued the People were estopped from bringing the petition by virtue of a consent decree California entered into in *United States v. California* (C.D.Cal., 2006, No. CV-06-2667-GPS) (*Mayberg*). Felix argued that the 2006 petition, which was based on a primary diagnosis of "paraphilia not otherwise specified," conflicted with a term of the consent decree. He argued the consent decree was binding on the People in the instant action under the doctrine of judicial estoppel. The relevant section of the consent decree required the State Department of Mental Health (DMH) to ensure that clinically justified diagnoses be provided for each individual under its care and particularly that any "not otherwise specified" diagnoses be "timely addressed (i.e. within 60 days), through clinically appropriate assessments, and resolved in a clinically justifiable manner." Felix argued, "The state seeks to continue detaining Felix on the basis of a diagnostic theory which the state previously repudiated via a voluntary agreement before a Federal Judge. . . . The state must either refine its diagnosis *now*, or dismiss the instant petition." The People opposed the motion, arguing paraphilia not otherwise specified is an appropriate diagnosis under SVPA and that nothing in the consent decree bars the state from seeking SVPA commitment of an individual with that diagnosis.

On August 8, 2006, Felix filed a second motion to dismiss the 2006 petition, which argued that the court's probable cause finding was unsubstantiated because the People failed to allege or prove at the hearing that Felix committed a "recent overt act" of criminal sexual violence prior to the initiation of SVPA proceedings in 1996. The People opposed the motion, arguing the SVPA does not require proof of a recent overt act before a commitment petition may be filed.

On September 11, 2006, Judge McBride denied both motions.

On September 8, 2006, the People moved to consolidate the three pending petitions for trial. The motion was denied. The consolidated 2002 and 2004 petitions remained scheduled for trial before Judge Morgan. The third petition, filed July 2006, was scheduled for trial before Judge McBride.

On September 20, 2006, the Governor signed the Sex Offender Punishment, Control, and Containment Act of 2006 (Stats. 2006, ch. 337; Senate Bill No. 1128 (2005–2006 Reg. Sess.)), which was urgency legislation that went

into effect immediately. (Stats. 2006, ch. 337, § 62.) Among other things, Senate Bill No. 1128 changed the term of commitment for SVP's from two years to an indeterminate term. (§ 6604, as amended by Stats. 2006, ch. 337, § 55.)

On September 27, 2006, the People moved to amend the pending petitions against Felix so that each would seek commitment for an indeterminate term. On October 3, Judge Morgan granted the motion as to the consolidated 2002 and 2004 petitions "without in any way indicating what kind of commitment I would make if, in fact, the jury found the petition to be true." The court added, "We will litigate that issue later if there is any reason to." As far as the record discloses, Judge McBride never ruled on the motion as to the 2006 petition.

A jury trial on the consolidated 2002 and 2004 petitions took place in October 2006. In the meantime, trial was continued on the 2006 petition. On October 18, 2006, the jury found that Felix was an SVP as defined in section 6600. On October 20, following legal argument on the issue of the appropriate term of commitment, the court committed Felix for an indeterminate term. On October 23, Judge McBride dismissed the 2006 petition over Felix's objections.

On October 26, 2006, Felix filed a notice of appeal from the judgment and commitment entered October 20 and the dismissal of the 2006 petition entered on October 23.

DISCUSSION

I., II.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Estoppel by Consent Judgment in* Mayberg[8]

In *Mayberg*, the United States Department of Justice sued the State of California, DMH Director Stephen Mayberg (in his official capacity only), and other state officials "to remedy an alleged pattern or practice of conduct that was alleged to deprive patients of Metropolitan State Hospital, in Norwalk, California, and Napa State Hospital, in Napa, California [State Hospitals] of rights, privileges, and immunities secured or protected

---

[*] See footnote, *ante*, page 607.

[8] Although Felix raised this argument in the trial court only with respect to the 2006 petition, which was ultimately dismissed, the parties briefed the issue on the merits as if it were applicable to the consolidated 2002 and 2004 petitions, which resulted in his indeterminate commitment. Therefore, we address the issue on the merits as well.

by the Constitution or laws of the United States." (*Mayberg, supra,* No. CV-06-2667-GPS.) On the same day the complaint was filed, the parties stipulated to a consent judgment requiring the defendants to take measures to improve conditions in the state hospitals. The court signed the judgment on May 15, 2006. On August 2, 2006, the complaint and consent judgment were amended to encompass Atascadero State Hospital in addition to the other named hospitals.[9]

The thrust of the consent judgment is to require defendants to use a "Recovery philosophy of care and a Psychiatric Rehabilitation model of service delivery" designed to strengthen and support each individual's recovery and rehabilitation. To that end, "Therapeutic and rehabilitation services shall be designed to address each individual's needs . . . ." The judgment imposes detailed requirements for these individual assessments. In the area of psychiatric assessments and diagnoses, the judgment requires the defendants to "use the diagnostic criteria of the most current Diagnostic and Statistical Manual of Mental Disorders . . . for reaching the most accurate psychiatric diagnoses." The judgment sets forth assessment requirements for the first 24 hours and first seven days of the patient's admission to the state hospital. It then provides, "Each State Hospital shall ensure that: i. clinically justifiable diagnoses are provided for each individual, and all diagnoses that cannot be clinically justified for an individual are discontinued no later than the next review; ii. the documented justification of the diagnoses is in accord with the criteria contained in the most current DSM (as per DSM-IV-TR Checklist); iii. differential diagnoses, 'deferred,' or 'rule-out' diagnoses, and diagnoses listed as 'NOS' ('Not Otherwise Specified') are timely addressed (i.e., within 60 days), through clinically appropriate assessments, and resolved in a clinically justifiable manner; and iv. 'no diagnosis' is clinically justified and documented."

Felix argues the People are judicially estopped from proceeding on the commitment petitions filed against him because the consent judgment precludes the type of diagnosis rendered in his case. He argues "the State of California seeks to continue to detain the defendant indefinitely based on a diagnostic theory which the State has recently and specifically repudiated in a voluntary agreement in a federal court."

■ Judicial estoppel applies when a party is successful in asserting a position in a judicial proceeding: the party will be estopped from taking a completely inconsistent position in a subsequent judicial proceeding. (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36

---

[9] Felix's request that we take judicial notice of the federal district court docket sheet for *Mayberg* (*Mayberg, supra,* No. CV-06-2667-GPS) is granted. (Evid. Code, §§ 452, subd. (d), 459, subd. (b).)

Cal.4th 412, 422 [30 Cal.Rptr.3d 755, 115 P.3d 41].) Felix has not shown that the defendants in the Mayberg action successfully asserted the position that NOS (not otherwise specified) diagnoses should be timely addressed and resolved in a clinically justifiable manner. Rather, the defendants acquiesced in a consent judgment that imposed this requirement on the state hospitals.

Nor are the People estopped under the doctrine of collateral estoppel. "The doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit. [Citation.]" (*Producers Dairy Delivery Co. v. Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910 [226 Cal.Rptr. 558, 718 P.2d 920].) A stipulated judgment may properly be given collateral estoppel effect if the parties manifest an intent to be collaterally bound by the judgment, as by stipulating to a specific factual finding. (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664–665 & fn. 2 [268 Cal.Rptr. 284, 788 P.2d 1156].) Felix argues the consent judgment "implicitly recognized what the introduction to the DSM IV makes clear: 'NOS' diagnoses are inherently limited and imprecise. Although useful as an initial diagnoses [*sic*] pending further investigation, a persistent NOS label as a primary diagnosis may well be a sign that the patient, despite some symptoms of mental disease, may not actually suffer form [*sic*] any identifiable and treatable disease." Neither the Diagnostic and Statistical Manual of Mental Disorders nor the consent judgment supports this argument.

██ The Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR) explains: "Because of the diversity of clinical presentations, it is impossible for the diagnostic nomenclature to cover every possible situation. For this reason, each diagnostic class has at least one Not Otherwise Specified (NOS) category . . . . *There are four situations in which an NOS diagnosis may be appropriate.*" (DSM-IV-TR (2000) p. 4, italics added.) First, "[t]he presentation *conforms to the general guidelines for a mental disorder* in the diagnostic class, but the symptomatic picture does not meet the criteria for any of the specific disorders. This would occur either when the symptoms are below the diagnostic threshold for one of the specific disorders or when there is an atypical or mixed presentation." (*Ibid.*, italics added.) Second, an NOS diagnosis may be appropriate if the presentation "conforms to a symptom pattern that has not been included in the DSM-IV Classification but that causes clinically significant distress or impairment." (*Ibid.*) Third, an NOS diagnosis may be appropriate if there is "uncertainty about etiology (i.e., whether the disorder is due to a general medical condition, is substance induced, or is primary)." (*Ibid.*) Fourth, an NOS diagnosis may be appropriate "[i]f there is insufficient opportunity for

complete data collection . . . or inconsistent or contradictory information, but there is enough information to place it within a particular diagnostic class." (*Ibid.*) In other words, the DSM-IV-TR lists particular instances when an NOS diagnosis is clinically appropriate in the mental health setting, like the SVP determination.

Felix cites isolated language in these four categories to argue an NOS diagnosis is a "fallback" diagnosis that is "neither complete nor effective," but is "by its nature, tentative or imprecise." As to the first category, Felix emphasizes the language that the symptoms may be "below the diagnostic threshold for one of the specific disorders," but he ignores the language requiring the presentation conform to the general guidelines for mental disorder or providing that an NOS diagnosis might be based on an atypical or mixed presentation rather than on symptoms being below a diagnostic threshold. As to the second category, he emphasizes the language that the symptom pattern has not been included in the DSM-IV-TR, but ignores the language that the pattern "causes clinically significant distress or impairment." As to the third category, he emphasizes the language regarding uncertain etiology, but ignores the fact that the category is not based on uncertainty about the patient's symptoms. As to the fourth category, he emphasizes the language about insufficient information, but ignores the requirement of sufficient information to place it within a particular diagnostic class. Indeed, as to all categories, Felix ignores the fact that the DSM-IV-TR provides such diagnoses "may be appropriate" if they satisfy the listed criteria. Felix's lay opinion that such diagnoses are "incomplete and only preliminary to a true, 'clinically justifiable' diagnosis" is contradicted by the DSM-IV-TR itself.

Felix also misrepresents the substance of the consent judgment. The judgment makes no express assertion (or finding) that NOS diagnoses are incomplete and unreliable. Nor does the consent judgment implicitly recognize such an assertion. The judgment requires NOS diagnoses to be addressed and resolved in a "clinically justifiable manner." Nothing precludes a further NOS diagnosis as a "clinically justifiable" resolution of the original diagnosis. The DSM-IV-TR acknowledges that NOS diagnoses may be appropriate. Some of the circumstances in which such a diagnosis is appropriate are based on limited information that might be augmented upon a further diagnosis: for example, newly discovered information about the patient's history that places him or her within a specific classification, symptoms observed at the state hospital that bring the patient within the diagnostic threshold of a specific classification, or newly discovered information about the etiology of the patient's symptoms. The language relied on by Felix in the consent judgment follows a list of requirements for prompt diagnosis of newly admitted patients. Therefore, the language could be directed primarily at preliminary NOS diagnoses that are based on available information. Nothing in the

judgment, however, indicates that an ongoing NOS diagnosis would not be appropriate based on all the information the state hospital is able to gather about the patient.

█ It is also significant to this court that the particular DSM-IV-TR diagnosis of paraphilia NOS has been the "Axis I" diagnosis in at least two important decisions discussing the legal appropriateness of an SVP finding under the SVPA. In *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 [81 Cal.Rptr.2d 492, 969 P.2d 584], the mental health disorder determined by the two mental health professionals (Drs. Nelson and Phenix) associated with the People's case was "paraphilia not otherwise specified." (See *id.* at p. 1150.) In *People v. Williams* (2003) 31 Cal.4th 757 [3 Cal.Rptr.3d 684, 74 P.3d 779] (*Williams*), the same particular mental health Axis I diagnosis was reached by the two licensed psychologists for the prosecution (Drs. Sheppard and Franks). (*Id.* at pp. 761–762.) Indeed, Dr. Sheppard concluded that a feature of this condition "predispose[d] [Williams] to sexually violent criminal behavior, as evidenced by his repeated misconduct of this nature and the fact that 'even in a controlled setting [he] continues to sexually act out in about the only way he can.' " (*Id.* at p. 762.) The Supreme Court then noted in *Williams* that the testimony regarding this particular disorder is "ample evidence" of the requisite proof of a serious difficulty in controlling dangerous behavior for purposes of the SVPA. (*Williams*, at p. 778.) "Both expert witnesses testified that defendant suffers from paraphilia, a serious, incurable mental disorder, which is characterized by the obsessive, repetitive, and driven nature of his criminal sexual violence." (*Ibid.*)

Finally, even if an NOS diagnosis were insufficient for implementation of the individualized recovery and rehabilitation treatment plans required by the consent judgment, it does not follow that they are insufficient for proof that a respondent is an SVP. The Legislature and voters have acknowledged that SVP's are a small set of extremely dangerous offenders that are very difficult or impossible to successfully treat. The People relied not only on the psychiatric diagnoses of Felix to prove he was an SVP, but also on his commission of sexually violent predatory crimes and specific psychiatric or psychological observations and assessments of his mental disorder, and dangerousness. The consent judgment in no way compels the People to provide a non-NOS psychiatric diagnosis before it can establish that a respondent is an SVP.

### IV. *Proof of Recent Overt Act*[10]

Felix argues proof of his SVP status was insufficient because there was no evidence he committed a recent overt act while he was out of custody.

■ Section 6600, subdivision (d) provides, " 'Danger to the health and safety of others' does not require proof of a recent overt act while the offender is in custody." (§ 6600, subd. (d), as amended by Stats. 2006, ch. 337, § 53; see also Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006) § 24.) Former section 6600, subdivision (d) was identical. (Former § 6600, subd. (d), as added by Stats. 1995, ch. 763, § 3, pp. 5922–5923.) The statute authorizes commitment if a court or jury determines beyond a reasonable doubt that the person is an SVP. (§ 6604, as amended by Stats. 2006, ch. 337, § 55; see also Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006) § 27.) An SVP is defined as "a person who has been convicted of a sexually violent offense against two or more victims and who has a diagnosed mental disorder that makes the person *a danger to the health and safety of others* in that it is likely that he or she will engage in sexually violent criminal behavior."[11] (§ 6600, subd. (a)(1), italics added, as amended by Stats. 2006, ch. 337, § 53; see also Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006) § 24.)

Felix argues the People were required to prove in this instant case that he committed an overt act while he was released on parole in the mid-1990's. We disagree. The issue before the jury was Felix's status as an SVP at the time of trial. The lack of a "recent" overt act was immaterial because recently (i.e., since 1996) Felix had been in custody. Section 6600, subdivision (d) expressly provided that recent overt acts need not be proven "while the offender is in custody." During the time of the trial we review here, and for approximately 10 years before, Felix was "in custody" for purposes of the SVPA. Nor does due process require proof of a recent overt act in such circumstances. "Due process does not require that the absurd be done before a compelling state interest can be vindicated. As in the present case, [a mentally disturbed sex offender] may have a predisposition to commit a specific type of sexual offense—one that cannot, as a practical matter, be committed during confinement." (*People v. Martin* (1980) 107 Cal.App.3d 714, 725 [165 Cal.Rptr. 773].)

---

[10] Although Felix raised this argument in the trial court only with respect to the 2006 petition, which was ultimately dismissed, the parties briefed the issue on the merits as if it were applicable to the consolidated 2002 and 2004 petitions, which resulted in his indeterminate commitment. Therefore, we address the issue on the merits as well.

[11] Proposition 83 changed the language of this subdivision to require a conviction of a sexually violent offense against "one or more victims" rather than "two or more victims." (Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006) § 24, p. 135.) That change is not relevant here.

Felix contends section 6600, subdivision (d) impliedly requires proof of a "recent overt act" whenever a person named in an SVP petition "has been out of custody for an extended period of time." However, he does not try to reconcile this "recent overt act" requirement with the facts in this particular case, where 10 years have elapsed since he was last out of custody, and commitment and recommitment determinations have passed without any challenge, becoming final judgments. Insofar as Felix argues that the facts of this case require the People to address the issue of any recent conduct by Felix to satisfy due process concerns, we disagree.

He relies on two cases for his argument. The first is *Personal Restraint of Young* (1993) 122 Wn.2d 1 [857 P.2d 989]. In that case, the petitioner Cunningham had "been released from confinement on a sex offense . . . and lives in the community immediately prior to the initiation of sex predator proceedings . . . proof of a recent overt act is necessary to satisfy due process concerns . . . ." (*Id.*, 857 P.2d at p. 1009.) *Young* relied on a 1982 Washington Supreme Court decision, *In re Harris*, which held that recent overt acts had to be proven before an individual could be civilly committed under a statute similar to California's Lanterman-Petris-Short Act, section 5000 et seq. (*Personal Restraint of Young*, at p. 1009, citing *In re Harris* (1982) 98 Wn.2d 276, 284 [654 P.2d 109, 113].) *Harris* relied in part on the particular language of the Washington statute and in part on two federal opinions that held a recent overt act finding was a due process requirement. (*In re Harris, supra*, 654 P.2d at p. 113.) Significantly, since *Harris*, a number of courts have held the due process clause does not require proof of a recent overt act to establish dangerousness sufficient to warrant a civil commitment. (See *Project Release v. Prevost* (2d Cir. 1983) 722 F.2d 960, 973–974 [listing cases and rejecting the particular requirement]; *Fisk v. Letterman* (S.D.N.Y. 2007) 501 F.Supp.2d 505, 523–524 [proof of overt act not required]; *State v. Bush* (2005) 283 Wis.2d 90, 95–96 [699 N.W.2d 80, 83], cert. denied 546 U.S. 1004 [163 L.Ed.2d 507, 126 S.Ct. 631] [rejecting argument that due process requires proof of recent overt act to support SVP determination where there is a break in SVP's incarceration and SVP was recommitted for nonsexual behavior]; *In re Commitment of P.Z.H.* (2005) 377 N.J.Super. 458, 466 [873 A.2d 595, 600] [current incarceration for SVP qualifying offense not required; commitment constitutional regardless of the date of last predicate offense, where the statutory requirements otherwise met]; *Beasley v. Molett* (Tex.App. 2002) 95 S.W.3d 590, 599 [Texas's SVP Act not unconstitutional for failure to require proof of recent overt act, where the statute required proof of repeat sexual offenses and a behavior abnormality making the SVP a "menace to the health and safety of another person"]; and *Matter of Cause No. MH-90-00566* (1992) 173 Ariz. 177, 184 [840 P.2d 1042] [proof of recent overt act not required for civil commitment, where statute required proof by clear and convincing evidence of substantial probability of harm].) This

authority is substantial; it supports this court's determination that there is no due process violation with the manner of applying the SVPA to this case.

It is also significant that the courts of Washington have moved away from the degree of reliance petitioner places on the *Young* holding. Simply stated, the SVP statute in Washington does not require proof of a recent overt act when the individual is in "custody." If the person named in the petition was confined or in custody at the time of the petition being filed, and therefore not "living in the community" the "recent overt act" requirement under the statute does not apply. (*Det. of Lewis* (2008) 163 Wn.2d 188, 201 [177 P.3d 708, 715].) The rationale of *Young* is therefore limited to its factual predicate. It would not apply in this case where Felix has been in custody for approximately 10 years before the trial which is the subject of this appeal.

The other case cited by Felix is *In re Detention of Gonzales* (Iowa 2003) 658 N.W.2d 102. There, the statute in question, when applied to the facts in the case, expressly obligated the trial court to find that the person had committed a recent overt act. Gonzales was not confined at the time the petition was filed. The Iowa statute expressly stated that a proper finding of " ' "[l]ikely to engage in predatory acts of sexual violence," ' " for a nonconfined subject, could be found " 'only if the person commits a recent overt act.' " (*Id.* at p. 103, italics omitted.) Obviously, the circumstances in this case diffuse reliance on this case interpreting specific provisions of an Iowa statute.

■ The United States and California Supreme Courts have exhaustively examined the issue of what showing is required to confine a sexually violent predator against his or her will consistent with the due process clause. (See, e.g., *Kansas v. Crane* (2002) 534 U.S. 407 [151 L.Ed.2d 856, 122 S.Ct. 867]; *Williams, supra,* 31 Cal.4th 757.) These controlling decisions require a finding of dangerousness to one's self or others that is linked to a mental disorder causing serious difficulty in controlling one's behavior. (*Williams,* at pp. 771–772, discussing *Kansas v. Crane, supra,* 534 U.S. 407.) The decisions do not require proof of recent overt acts as a constitutional minimum for these types of civil commitments. The requirements of two convictions for sexually violent offenses and evidence of a current mental disorder making it likely the individual will reoffend satisfy the due process dangerousness requirement in this context. (*Williams,* at pp. 764, 776.)

■ Even if the state is required to prove an overt act during Felix's most recent sustained period out of custody, the requirement was satisfied here. During that period (the mid-1990's), Felix was repeatedly returned to custody for parole violations. Dr. Scherrer testified at the 2006 trial that the length of time Felix was out of custody was insufficient to conclude he was not a

significant risk for committing further sexually violent offenses. Combined with his prior convictions for sexually violent offenses involving more than two separate victims and the current psychiatric opinion that he had a mental disorder that caused him serious difficulty in controlling his behavior, the totality of this evidence demonstrated sufficient dangerousness to involuntarily commit Felix as an SVP.

V., VI.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The indeterminate term of commitment imposed October 20, 2006, and the dismissal of the 2006 petition are affirmed.

Simons, Acting P. J., and Needham, J., concurred.

On January 6, 2009, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 25, 2009, S170045.

---

[*]See footnote, *ante*, page 607.