Filed 11/3/20  P. v. Williams CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B302859 |
| Plaintiff and Respondent, | (Super. Ct. No. F000463370001) |
| v. | (San Luis Obispo County) |
| JOHN TERRELL WILLIAMS, | |
| Defendant and Appellant. | |

John Terrell Williams appeals the judgment entered after a jury found he met the criteria for commitment as a sexually violent predator (SVP; Welf. & Inst. Code,[1] § 6600 et seq.).  The trial court committed appellant to the California Department of State Hospitals.  Appellant contends the evidence is insufficient to support the jury's finding that he suffers from a diagnosed mental disorder that predisposes him to commit criminal sexual

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

acts, and that the trial court erred in admitting evidence of two sex offenses of which he was not convicted. We affirm.

**STATEMENT OF FACTS**

**I.**

*Appellant's Sex Offenses*

In August 1987, Jamie G. was housesitting in San Bernardino with her six-year-old daughter. Appellant lived next door. On her third night in the house, Jamie awoke in her bed to find appellant straddling her. He began kissing her neck and she felt his erect penis against her body. Jamie said, "You're the guy from next-door. Please stop, . . . [g]o away. I won't tell nobody. Just go." Appellant groped Jamie's breasts and tried to lift her shirt. Jamie struggled with appellant and they both fell off the bed. Jamie grabbed appellant by the hair, screamed at her daughter to call 911, and dragged appellant to the front lawn. Jamie saw a neighbor and screamed for help. Appellant broke loose and punched Jamie in the eye. Appellant returned to his residence and was subsequently arrested.

In May 1991, D.G., who was then five years old, was living in an apartment complex in San Bernardino with her mother Carol and appellant, who was Carol's boyfriend. D.G. told the police that appellant had touched her "private areas" with his mouth and nose and inserted his fingers in her vagina when she took a bath. D.G. told Carol about the molestations but she did not want to hear what D.G. had to say. After D.G. made her statement to the police, she was never contacted again by law enforcement. During a 2017 interview with an investigator from the San Luis Obispo County District Attorney's office, D.G. stated that appellant's molestations took place over several months in both Carol's house and appellant's motel room. Appellant told

2

D.G. she would be punished if she did not keep quiet. On more than one occasion, appellant also made D.G. touch his penis.

A.V. was born in October 1979. In 1991, A.V. and her mother were living in the same apartment complex where appellant was living with Carol and D.G. One night while her parents were having a party, A.V. went to appellant's apartment to play with other children who were there and fell asleep on the living room floor. A.V. woke up to discover appellant touching her vagina and breasts both over and under her clothing. Appellant proceeded to pull down A.V.'s pants and underwear and attempted to sodomize her. A.V. got up, ran to the bathroom, and locked the door. She tried to leave the apartment through the bathroom window, but appellant was waiting for her outside. A.V. returned to the living room where other children were sleeping and told one of them what had happened. She subsequently told her mother and the incident was reported to the police.

In 1994, 13-year-old J.P. was living in Fontana with her parents and sister. Appellant, who a friend of J.P.'s sister, began staying with them in January 1994. One morning in May 1994 after J.P.'s mother had left the home, appellant followed J.P. into her bedroom, ripped off her pajamas and underwear, and pushed her head into a pillow. J.P. screamed for her father, who was still asleep, but he could not hear her because her screaming was muffled by the pillow. Appellant proceeded to sodomize J.P. for approximately 25 minutes before ejaculating on her buttocks and the bedsheets. After appellant left, J.P. went next door and told her friend what had happened. J.P. then told her mother about the assault. J.P.'s mother confronted appellant and he denied that the incident occurred. J.P.'s mother subsequently took her

to the hospital and she was examined.  J.P. also gave the police her torn pajamas and underwear.

## II.

### *Prosecution Mental Health Experts*

#### A. *Dr. Sreenivasan*

Dr. Shoba Sreenivasan is a forensic psychologist with the Department of State Hospitals.  Dr. Sreenivasan conducted SVP evaluations of appellant in 2011 and in 2017.  The doctor attempted to conduct another evaluation in 2019 but appellant declined to be interviewed.  Dr. Sreenivasan opined that appellant's 1991 conviction for lewd and lascivious conduct upon a child under the age of 14 (involving victim A.V.) and his 1994 conviction for sodomy of child under the age of 14 (involving victim J.P.) were sufficient to satisfy the first criteria for an SVP commitment.

Dr. Sreenivasan diagnosed appellant as suffering from Antisocial Personality Disorder (ASPD).  Appellant had engaged in a pattern of disregard for the rights of others since the age of 15, was deceitful, aggressive, and impulsive, and lacked remorse for his actions.  Although ASPD tends to diminish at age 40, appellant's ASPD had not remitted as evidenced by the fact he continued to engage in antisocial and aggressive behavior while in custody.  ASPD is a pathway to sexual offending when the criminal behaviors are sexual in nature.  Appellant suffers from a "severe" form of ASPD and his pattern of criminal behavior includes more sexual offenses than non-sexual offenses.  He also continued committing sexual offenses after he was released from prison for other such offenses.  In 2011, appellant told the doctor he committed the sexual offenses because "he does what he wants to do."

4

As to the second SVP criteria, Dr. Sreenivasan opined that appellant "is predisposed to exhibiting sexual criminal behavior as a result of [his ASPD], and that it is to a degree that he's a menace to the health and safety of others." Because there was a link between appellant's ASPD and a pathway to sexual offending, appellant was likely to commit sexual predatory behavior if released. Although appellant had not committed sexual offenses while in prison, he had exhibited "offense analog behaviors" including aggressive and hostile behavior toward female staff members. Moreover, the evidence showed that appellant's ASPD would not diminish if he was released. He had declined to participate in sex offender treatment while in prison and denied having a mental disorder, so he was not likely to seek and participate in treatment.

**B. *Dr. Arad***

Dr. Sara Arad is a clinical psychologist who treats SVP patients at the Department of State Hospitals in Coalinga. Appellant was one of Dr. Arad's patients from March 2017 until August 2019. Dr. Arad explained the benefits of SVP treatment to appellant and encouraged him to participate, but he never did so. Appellant also declined to take recommended classes on anger management, communication skills, and breaking barriers. Following an assessment, appellant was found to be at a moderate risk for violence in an institutional setting. While appellant was at Coalinga, he received verbal aggression incident reports every year from 2012 and 2019. At least two such incidents involved female staff members.

**C. *Dr. Owen***

Dr. Robert Owen is a clinical psychologist who had conducted approximately 2,000 SVP evaluations and had testified as an SVP expert approximately 400 times. Dr. Owen

5

interviewed appellant in 1998, 2002, 2011, 2015, 2017, and 2019 for purposes of determining whether he qualified for an SVP commitment. The doctor also reviewed reports about appellant's sexual offenses and behavior while in state hospitals.

Dr. Owen diagnosed appellant as suffering from ASPD and other specified paraphilic disorder.[2] Although appellant's ASPD was independently sufficient to satisfy the first criteria for an SVP commitment, there was also a paraphilic aspect to appellant. His ASPD was demonstrated by his lack of empathy, callous behavior, and the use of girls as objects for his sexual pleasure. The diagnosis of other specified paraphilic disorder was based on appellant's deviant sexual attraction to non-consenting females. Appellant's ASPD "amplifie[d]" his paraphilia and made him more sexually preoccupied, aggressive, and callous. The doctor found "too much evidence showing that [appellant's] sexuality is very abnormal," including his repeated sexual contact with young girls.

Appellant's behavior was also persistent and involved great risks of being apprehended, which demonstrated his enjoyment of non-consensual sex acts. According to Dr. Owen, this behavior showed a pattern of sexual deviance. Moreover, appellant had previously committed new sex offenses shortly after being released from prison for other sex offenses. The doctor thus opined that appellant had a diagnosed mental disorder that predisposed him to sexually reoffend. Utilizing the Static-99-R,

---

[2] Other specified paraphilic disorder is identified in the current version of Diagnostic and Statistical Manual of Mental Disorders (DSM-V), which is published by the American Psychiatric Association. In prior versions of the DSM, the disorder was identified as paraphilia not otherwise specified [NOS].

6

Dr. Owen assessed appellant as presenting an elevated risk of reoffending, with a 21.1 percent likelihood of being arrested for committing another sex offense within 5 years and a 32.1 percent likelihood of reoffending within 10 years. When the doctor utilized a psychopathy checklist, appellant scored in the severe psychopathy range. This assessment demonstrated that appellant would not follow conditions of his probation or parole.

Based on appellant's diagnosed mental disorders, his prior recidivism, the conducted assessments, and appellant's failure to acknowledge or address his sexual deviancy, Dr. Owen opined that he also met the third SVP criteria, i.e., that he posed a serious risk of committing new sex offenses if released into the community. Appellant was particularly predisposed to rape young girls, since he had not addressed his sexual deviance or participated in treatment to control his impulses.

### III.

### *Defense Mental Health Experts*

#### A. *Dr. Sidhu*

Dr. Laljit Sidhu is a psychologist and SVP evaluator with the Department of State Hospitals. Dr. Sidhu evaluated appellant and reviewed his records. He also previously met with appellant in 2012, 2017, and 2019. Dr. Sidhu found that appellant had two convictions that qualified him for SVP treatment. The doctor agreed with appellant's diagnosis of ASPD, but opined that the disorder did not predispose him to commit criminal sex acts. Dr. Sidhu also agreed that a paraphilia involving rape would qualify as a mental disorder for purposes of an SVP commitment, but ruled out a such a diagnosis for appellant because his offenses were not motivated by a deviant sexual preference such as becoming aroused by a non-consenting victim's efforts to resist him. The doctor instead

concluded that appellant's behaviors were explained by his ASPD.

Based on a risk assessment, Dr. Sidhu further found that appellant did not pose a serious and well-founded risk of harm to the public. The doctor acknowledged that appellant scored very high on the psychopathology checklist, and agreed it was unlikely that he would participate in treatment if released.

**B. *Dr. Phenix***

Dr. Amy Phenix is a forensic psychologist in private practice with training and experience in SVP evaluations. She had testified as an SVP expert approximately 200 times. Dr. Phenix initially evaluated appellant in 2012 at the request of his defense team and reviewed his records.

Dr. Phenix opined that appellant did not have mental disorder that qualified him for an SVP commitment. Although the doctor agreed with appellant's diagnosis of ASPD, she did not believe that the disorder predisposed him to commit criminal sex acts if he were released into the community. Dr. Phenix disagreed with the opinions of other mental health experts that an SVP commitment can be based on a diagnosis of ASPD. The doctor also disagreed with Dr. Owen's diagnosis of other specified paraphilic disorder because she did not believe that appellant had a deviant preference for nonconsensual sex acts. Utilizing the Static-99-R instrument, Dr. Phenix found that appellant presented an average risk of reoffending. Appellant had a 7.9 percent chance of committing another criminal sex act within 5 years, which is too low to satisfy the third SVP criterion. Dr. Phenix acknowledged, however, that appellant scored in the high range of psychopathy.

## C. *Dr. Frances*

Dr. Allen Frances is a psychiatrist and professor who was involved in drafting previous versions of the DSM. Dr. Frances had testified approximately 30 times as an expert on the use or accuracy of paraphilia diagnoses in SVP cases, but had no experience in conducting SVP evaluations.

Dr. Frances disagreed with Dr. Owen's diagnosis of other specified paraphilic disorder. Dr. Frances concluded that Dr. Owen had ignored literature regarding the proper use of paraphilia in SVP cases and that the stated reasons for his diagnosis were both inaccurate and misleading. The committees that prepared the DSM had repeatedly rejected the inclusion of a diagnosis of "paraphilic coercive rapism" and had not included rape behavior as an example of an otherwise specified type of paraphilia. Dr. Frances also opined that a diagnosis of ASPD for someone who commits sex offenses is not an independent predictor of subsequent sex offending. According to the doctor, an ASPD diagnosis in this context is "redundant" since most sex offenders met the criteria for such a diagnosis.

## DISCUSSION

## I.

Appellant contends the evidence is insufficient to support the jury's finding that he suffers from a diagnosed mental disorder within the meaning of the SVP Act. He argues that an SVP commitment cannot be based on personality disorders such as ASPD. He also complains that Dr. Owen's diagnosis of other specified paraphilic disorder was an "outlier" that contradicted all the other experts' testimony, was based on the doctor's "internally contradictory testimony," was expressly rejected by the DSM, and essentially amounted to a diagnosis based on rape. We are not persuaded.

"When a defendant challenges the sufficiency of the evidence to support a finding that he is an SVP, 'this court must review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below.  [Citation.]  To be substantial, the evidence must be "'of ponderable legal significance . . . reasonable in nature, credible and of solid value."'  [Citation.]'  [Citation.]  'In reviewing the record to determine the sufficiency of the evidence this court may not redetermine the credibility of witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment.'  [Citation.]"  (*People v. Sumahit* (2005) 128 Cal.App.4th 347, 352.)

The SVP Act defines an SVP as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."  (§ 6600, subd. (a)(1).)  A diagnosed mental disorder is defined to "include[] a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others."  (*Id.*, subd. (c).)  The testimony of a single expert witness that an individual has a diagnosed mental disorder that renders him or her dangerous to the community is sufficient evidence on that issue.  (*People v. Scott* (2002) 100 Cal.App.4th 1060, 1064.)

Contrary to appellant's claim, his diagnoses of ASPD and other specified paraphilic disorder are each independently sufficient to establish the first SVP criteria.  In *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, our Supreme Court rejected the suggestion that the SVP Act was unconstitutional

10

because ASPD and other conditions characterized by an inability to control violent antisocial behavior, such a paraphilia, are not expressly included in the Act's definition of a diagnosed mental disorder. (*Id.* at p. 1158.) The court reasoned that no controlling authority "purports to limit the range of mental impairments that may lead to the 'permissible' confinement of dangerous and disturbed individuals." (*Id.* at p. 1161.) In so holding, the court necessarily found that ASPD or paraphilia can qualify as diagnosed mental disorders under the SVP Act.

As *Hubbart* makes clear, there is no limit to the mental disorders that may serve as the basis for an SVP commitment. (*Hubbart v. Superior Court, supra,* 19 Cal.App.4th at p. 1161.) Such a commitment "'is permissible as long as the triggering condition consists of "a volitional impairment rendering [the person] dangerous beyond their control." [Citation.]'" (*People v. Williams* (2003) 31 Cal.4th 757, 768.) Moreover, numerous other courts have recognized that both ASPD and paraphilia can provide the basis for an SVP commitment. (See, e.g., *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1089-1090 [paraphilia NOS]; *People v. Felix* (2008) 169 Cal.App.4th 607, 617 [same]; *People v. Burris* (2002) 102 Cal.App.4th 1096, 1110 [ASPD and paraphilia involving rape]; *People v. Butler* (1998) 68 Cal.App.4th 421, 430, 442 [SVP commitment based on paraphilia NOS].) Appellant's efforts to distinguish this authority are unavailing.

We also reject appellant's claim that the prosecution expert's opinions were in any event insufficient to support the jury's finding that he has a diagnosed mental disorder within the meaning of the SVP Act. In making this claim, appellant essentially asks us to reweigh the evidence and reevaluate the credibility of the witnesses, which we cannot do. (*People v. Sumahit, supra,* 128 Cal.App.4th at p. 352.) Although appellant's

11

experts disputed the opinions offered by Drs. Sreenivasan and Owen, the jury plainly found the prosecution's experts more credible and we have no authority to second-guess that decision. (*People v. Maury* (2003) 30 Cal.4th 342, 403; *People v. Poe* (1999) 74 Cal.App.4th 826, 830-831.)

## II.

Appellant also contends the trial court erred in admitting evidence of his sex offenses against J.P. and D.G. He claims the evidence should have been excluded because he was not convicted of those offenses and they were too remote to be relevant to the issues to be decided by the jury. He also claims the court abused its discretion in overruling his Evidence Code section 352 objection because the evidence was substantially more prejudicial than probative. We conclude otherwise.

The Evidence Code applies to SVP proceedings. (*People v. Superior Court (Couthren)* (2019) 41 Cal.App.5th 1001, 1010.) Accordingly, only relevant evidence is admissible. (Evid. Code, § 402.) The trial court has discretion under Evidence Code section 352 to exclude relevant evidence if "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*Id.*, § 354.) We review rulings pursuant to Evidence Code section 352 for an abuse of discretion. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496.) We reverse only if the court's ruling was "'arbitrary, capricious, or patently absurd'" and caused a "'manifest miscarriage of justice.'" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

The court did not err in admitting evidence of appellant's sex offenses against J.P. and D.G. That evidence "was highly probative of the two issues that the jury had to decide: whether

12

[appellant] had a diagnosed mental disorder that made him a danger to the health and safety of others; and whether, due to that mental disorder, [he] was likely to engage in sexually violent behavior if released.  Details about [appellant's] past sexually violent conduct were important to the jury's determination of these issues."  (*People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1234.)  Moreover, "[a]lthough the details of the crimes were odious, it was necessary for the jury to learn not just that [appellant] had committed numerous sex offenses, but the scope and nature of his sexually predatory behavior."  (*Ibid.*)

The evidence was thus relevant, and the court did not abuse its discretion in admitting it over appellant's Evidence Code section 352 objection.  (See *ibid.* [trial court did not abuse its discretion in rejecting Evidence Code section 352 objection to evidence of the defendant's "string" of sex offenses in 1981 and 1982].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P.J.

YEGAN, J.

13

Timothy S. Covello, Judge

Superior Court County of San Luis Obispo

_____

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jaime L. Fuster and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.