873 A.2d 595 (2005)
377 N.J. Super. 458
In the Matter of the Civil COMMITMENT OF P.Z.H.
Superior Court of New Jersey, Appellate Division.
Argued April 12, 2005.
Decided May 12, 2005.
Joan D. Van Pelt, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; Sondra Burke, Assistant Deputy Public Defender, of counsel, on the brief).
Mary Beth Wood, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Ms. Wood and Dina Mikulka, Deputy Attorney General, on the brief).
Before Judges STERN, COBURN and S.L. REISNER.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
This appeal presents the issue whether the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38, authorizes the commitment of a sex offender following completion of a prison sentence for an offense that is not a predicate offense under the SVPA. We hold that current incarceration for an SVPA index offense is not a prerequisite for commitment under the SVPA. The SVPA authorizes commitment where the defendant was convicted of a predicate offense in the past, and where the State proves by clear and convincing *596 evidence that the defendant currently meets the definition of a sexually violent predator and currently presents a high risk of committing another sexually violent offense if released.

I
We discuss the facts in some detail, because they illuminate our conclusion about the proper construction of the SVPA. P.Z.H. had prior convictions in 1965 and 1975 for "carnal abuse" of young girls. In the 1965 incident, he committed carnal abuse on a twelve-year old developmentally disabled girl. The 1975 incident involved a nine-year old girl. He also has a long history of drug and theft offenses.
P.Z.H. committed the predicate offense in 1981, when he molested a four-year old girl. Medical evidence indicated that the child "had been penetrated and that her hymen was damaged." P.Z.H. was convicted of sexual assault, N.J.S.A. 2C:14-2b, and in 1982, he was sentenced to twenty years in prison, with a ten year period of parole disqualification. Because he was found to be a repetitive and compulsive sex offender, P.Z.H. served a portion of his sentence at Avenel. He was released from prison in 1993. In 1994, he was found guilty in municipal court of harassing three young girls. He was sentenced to a total of sixty days in the county jail.
In 1998, he was convicted of failing to register under Megan's Law, N.J.S.A. 2C:7-2 to -19, as well third-degree possession of a controlled dangerous substance. These are not predicate offenses under the SVPA. See N.J.S.A. 30:4-27.26. He was sentenced to eighteen months in prison. During his incarceration, P.Z.H. told a nurse at the South Woods prison that he could not wait to be released because he had an eight-year old niece who was the perfect age to sit on his lap.
The State sought to commit P.Z.H. under the SVPA in 2000, when he was about to be released. The petition was supported by clinical certificates from Dr. Liberatore and Dr. Kaldany, both of whom attested that P.Z.H. admitted to them that he had molested between thirty and fifty young girls over his lifetime. P.Z.H. told Dr. Liberatore that he "is a pedophile." He admitted to Dr. Kaldany that he would "always have fantasies about young girls," and "you can't fight these urges." Dr. Kaldany reported that P.Z.H. claimed "the young girls were seductive with him and perpetuated his behavior." Following a plenary hearing in 2001, the trial judge concluded that P.Z.H. was a sexually violent predator and ordered that he be committed under the SVPA; P.Z.H. did not appeal his initial commitment. Nor did he appeal a May 15, 2002 determination continuing his commitment.
This appeal arises from P.Z.H.'s second review hearing, held on December 2 and December 9, 2002. At that hearing, the State presented testimony from Dr. Stanley R. Kern, a psychiatrist who interviewed P.Z.H. in November 2002, and Dr. Gregory Gambone, a clinical psychologist. Dr. Kern testified that P.Z.H. had not yet discussed his uncharged offenses (the thirty to fifty prior molestations of young girls) in the therapy groups at the Special Treatment Unit (STU), and that such discussion would be an important part of his therapy. He also had not completed certain significant therapy programs, such as "Family of Origin." Dr. Kern further testified that in his interview with P.Z.H., he "minimized his [index] offense." He also told Dr. Kern that "there was no violence in my crimes. I molested them [the young girls]. And there was anger in the molestation. And then he said it was a game, it *597 was pleasurable to them."[1] Dr. Kern concluded that these statements indicated "that [P.Z.H.] has no understanding of the effect upon the victim. There's no victim empathy at all." Dr. Kern testified that victim empathy is important "to prevent re-offending." He testified that P.Z.H. also had an inadequate understanding as to why he molested young girls, and that he could not progress in therapy without this understanding. P.Z.H. also admitted that at the STU he would become aroused when he saw young girls on television.
Dr. Kern testified that when he asked P.Z.H. about his plans if released, P.Z.H. made no mention of obtaining therapy after release. Dr. Kern inferred, from the fact that P.Z.H. was not compliant with treatment for his life-threatening kidney problems,[2] that he was also not likely to comply with sex offender therapy if released. Dr. Kern diagnosed P.Z.H. with pedophilia and anti-social personality disorder, and concluded that he had "little volitional control," that he presented "a fairly high risk to re-offend," and that "his mental condition makes it seriously difficult for him to control his ... sexually violent behavior." Dr. Kern also characterized P.Z.H. as presenting a "high danger" to re-offend. Dr. Gambone, a member of the Treatment Progress Review Committee (TPRC), testified that P.Z.H. still had only "a limited understanding of his offense cycle" and had not completed essential components of his therapy.
Judge Perretti concluded that P.Z.H. "continues to be a sexually violent predator," and "it is highly likely that he will not control his sexually violent behavior, and will re-offend.... There is no doubt that the respondent can't control his behavior." She based her decision on Dr. Kern's diagnosis of pedophilia and anti-social personality disorder, and on P.Z.H.'s documented history of failing to cooperate with therapy at the STU, as well as his pattern of minimizing his offenses and his "superficial understanding of his sex offending."

II
On this appeal, P.Z.H. raises the following issues:
POINT I: THE TRIAL COURT EXCEEDED ITS CONSTITUTIONAL AND STATUTORY AUTHORITY BY COMMITTING P.Z.H. UNDER THE SVPA, BECAUSE P.Z.H. WAS NOT SERVING A SENTENCE FOR A SEXUALLY VIOLENT OFFENSE WHEN COMMITTED AND THERE WAS NO EVIDENCE OF RECENT DANGEROUS BEHAVIOR OR THREAT.
POINT II: DUE PROCESS REQUIRES THAT THE GROUNDS FOR COMMITMENT AS A SEXUALLY VIOLENT PREDATOR BE PROVEN BEYOND A REASONABLE DOUBT.
POINT III: THE STATE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT P.Z.H. WAS SUBJECT TO SVP COMMITMENT.
We conclude that Points Two and Three are without merit and do not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). The evidence supports Judge *598 Perretti's conclusion by clear and convincing evidence that P.Z.H. continues to be a sexually violent predator who is highly likely to re-offend if released. In re Commitment of W.Z., 173 N.J. 109, 127-28, 801 A.2d 205 (2002). We now turn to a discussion of Point One.
The SVPA authorizes involuntary civil commitment of sexually violent predators. The Act defines "sexually violent predator" in terms of the type of crime the person has committed, and does not limit the definition in relation to when the person committed the crime:
Sexually violent predator means a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.
[N.J.S.A. 30:4-27.26 (emphasis added).]
In turn, "sexually violent offense" is defined as
(a) aggravated sexual assault; sexual assault; aggravated criminal sexual contact; kidnapping pursuant to subparagraph (b) of paragraph (2) of subsection c. of N.J.S. 2C:13-1; criminal sexual contact; felony murder pursuant to paragraph (3) of N.J.S. 2C:11-3 if the underlying crime is sexual assault; an attempt to commit any of these enumerated offenses; or a criminal offense with substantially the same elements as any offense enumerated above, entered or imposed under the laws of the United States, this State or another state; or (b) any offense for which the court makes a specific finding on the record that, based on the circumstances of the case, the person's offense should be considered a sexually violent offense.
[Ibid.]
Read together, these provisions authorize the commitment of any person who has committed a sexually violent offense, without regard to when the offense was committed or whether the person is currently incarcerated for that offense. Moreover, since the Act applies whether the offense was committed in New Jersey or "under the laws of the United States ... or another State," ibid., the Legislature could not have intended to limit application of the Act to persons about to be released from prisons or psychiatric hospitals. New Jersey authorities would have no way of knowing when a sexual predator was about to be released from a prison in another state. Further, the sections of the Act that define the Attorney General's authority to seek commitment of a predator contain no such limitation.
The SVPA authorizes the Attorney General to seek the involuntary commitment of a person who may be a sexually violent predator under a series of different circumstances set forth in N.J.S.A. 30:4-27.28. We quote the statute at length, because it illustrates the breadth of the Attorney General's authority:
a. The Attorney General may initiate a court proceeding for involuntary commitment under this act of a person who is currently a patient in a short-term care facility, State or county psychiatric facility or special psychiatric hospital, by submitting to the court a clinical certificate for a sexually violent predator completed by a psychiatrist at the facility at which the person is a patient and the screening certificate which authorized admission of the person to the facility; but both certificates shall not be signed by the same psychiatrist unless the psychiatrist has made a reasonable *599 but unsuccessful attempt to have another psychiatrist conduct the evaluation and execute the certificate.
b. If civil commitment is not initiated pursuant to subsection a. of this section, the Attorney General may initiate a court proceeding for the involuntary commitment of a person by the submission to the court of two clinical certificates for a sexually violent predator, at least one of which is prepared by a psychiatrist. The person shall not be involuntarily committed pursuant to this act before the court issues a temporary court order. When the Attorney General determines that the public safety requires initiation of a proceeding pursuant to this subsection, the Attorney General may apply to the court for an order compelling the psychiatric evaluation of the person. The court shall grant the Attorney General's application if the court finds that there is reasonable cause to believe that the person named in the petition is a sexually violent predator.
c. The Attorney General may initiate a court proceeding for involuntary commitment under this act of an inmate who is scheduled for release upon expiration of a maximum term of incarceration by submission to the court of two clinical certificates for a sexually violent predator, at least one of which is prepared by a psychiatrist.
d. The Attorney General, in exercise of the State's authority as parens patriae, may initiate a court proceeding for the involuntary commitment of any person in accordance with the procedures set forth in this section by filing the required submission with the court in the jurisdiction in which the person whose commitment is sought is located.
[Ibid. (emphasis added).]
Nothing in the statute as quoted suggests that the Attorney General may only seek commitment of a person who is about to be released from confinement, or that the person, if confined, must have been confined for committing a predicate offense, or that the person must have recently committed a predicate offense. While subsections a and c, respectively, authorize the Attorney General to initiate commitment proceedings for persons currently committed to a psychiatric facility or currently incarcerated in prison, subsection d more generally authorizes the Attorney General, in exercise of the State's authority as parens patriae, to initiate commitment proceedings for any person. Subsection b generally authorizes the Attorney General to seek a psychiatric evaluation of a person where there is reasonable cause to believe that the person ... is a sexually violent predator. Ibid.
The legislative history of the Act also supports a broad construction of the Attorney General's authority to seek commitment. After reciting that the Attorney General may initiate commitment proceedings for a prison inmate who is scheduled for release, the Statement on the bill adds that and in the exercise of the State's authority as parens patriae, [the Attorney General] may initiate proceedings for any person, by filing required submissions with the court. Assembly Appropriations Committee, Statement to S.895 (enacted as L. 1998, c. 71).
The Act was intended to protect society from persons whose mental abnormalities or personality disorders ... make them likely to engage in repeat acts of predatory sexual violence if not treated for their mental conditions. N.J.S.A. 30:4-27.25a. Limiting the commitment process to inmates about to be released after serving sentences for sexually violent crimes, or even to persons whose sexually violent offenses were committed recently, would be *600 inconsistent with the language and purpose of the Act.
Regardless of the date of the last predicate act, the constitutionally-mandated touchstone of the Act is proof by clear and convincing evidence that the person currently suffers from a mental condition that makes him or her a sexually violent predator and currently presents a high likelihood of committing sexually violent acts if not committed. W.Z., supra, 173 N.J. at 132-34, 801 A.2d 205 (2002) (The State must prove "his or her present serious difficulty with control over dangerous sexual behavior," id. at 132-33, 801 A.2d 205, and the State must establish by clear and convincing evidence that it is highly likely that the committee will reoffend. Id. at 133-34, 801 A.2d 205.). See also In re Civil Commitment of J.H.M., 367 N.J.Super. 599, 608-11, 845 A.2d 139 (App.Div.2003), certif. denied, 179 N.J. 312, 845 A.2d 137 (2004). While the remoteness of the last predicate act may be relevant to that inquiry, it also may be insignificant. Where, for example, a sex offender has been incarcerated for most of the time between the predicate act and the commitment proceeding, the absence of recent offenses may simply be due to lack of opportunity. Further where, as here, the person admits to having committed dozens of sexually violent acts for which he was never arrested, the absence of a recent conviction may be less significant.[3]
Indeed, the facts of this case illustrate that our construction of the statute serves its legislative purpose. When P.Z.H. was released from prison in 1993, the SVPA had not yet been enacted. Hence, the State could not have sought to commit him upon his release following his incarceration for the index offense.[4] But, given his admission to having molested dozens of young girls in the past, and his insufficiently-treated pedophilia and anti-social personality disorder, P.Z.H. would have presented a high risk of committing more sex offenses if he were released in 2000 following his prison term for the non-index crimes. As he stated to a prison nurse during his incarceration, he was eagerly anticipating the opportunity to have his young niece sit on his lap. The State was not obligated to wait for P.Z.H. to molest another child before seeking to commit him.
We emphasize that the commitment decision on appeal here was not based solely upon P.Z.H.'s 1981 sex offense. It was based upon current as well as historical evidence which clearly and convincingly established that, at the time of his hearing, P.Z.H. remained a sexually violent predator who posed a current high risk of re-offending. See N.J.S.A. 30:4-27.32a; W.Z., supra, 173 N.J. at 132-34, 801 A.2d 205.
Affirmed.
NOTES
[1] P.Z.H. admitted to Dr. Kern that he would "groom" his victims by giving them gifts and "special attention" in order to gain their trust.
[2] P.Z.H. has end-stage renal failure and was a homeless drug user prior to his most recent incarceration.
[3] P.Z.H. cites cases from Massachusetts, Washington, and Iowa, in support of his contentions that a person who is not serving a prison sentence for an index offense cannot be committed under the SVPA, or that proof of a "recent overt act" should be required to support commitment under the SVPA. Commonwealth v. McLeod, 437 Mass. 286, 771 N.E.2d 142 (2002); In re Detention Albrecht, 106 Wash.App. 163, 23 P.3d 1094 (2001); In re Detention of Gonzales, 658 N.W.2d 102 (Iowa 2003). We conclude that the cited cases are not on point, because of the different wording of the commitment statutes in those states.
[4] We also note that, had P.Z.H. served the full twenty-year sentence imposed for molesting his four-year old victim, he would still have been incarcerated in 2000, at the time the State first sought his commitment under the SVPA.