**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4986-14T2

IN THE MATTER OF THE CIVIL
COMMITMENT OF T.R., SVP-704-14.

_____

Submitted May 8, 2017 — Decided May 24, 2017

Before Judges Nugent and Currier.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. SVP-
704-14.

Joseph E. Krakora, Public Defender, attorney
for appellant (Michele C. Buckley, Designated
Counsel, on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent (Melissa H. Raksa,
Assistant Attorney General, of counsel; Lauren
S. Kirk, Deputy Attorney General, on the
brief).

PER CURIAM

Appellant T.R. appeals from a June 3, 2015 Law Division order

involuntarily committing him to the Special Treatment Unit (STU)

under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-

27.24 - 27.38.  For the reasons that follow, we affirm.

On October 31, 2014, the State filed a petition to civilly commit T.R. under the SVPA. At that time, T.R. was serving a sentence he was expected to complete the following month. The petition enumerates the following sexual offenses: On November 30, 2011, T.R.'s pre-teenage daughter told police that her father, T.R., sexually assaulted her by "putt[ing] his thing in my butt." In December 2011, T.R.'s son, in his early teens, told his mother that his father, T.R., put Vaseline on his penis and stroked him up and down. For these offenses, a grand jury charged T.R. in an indictment with first-degree aggravated sexual assault of a child under thirteen years old, N.J.S.A. 2C:14-2(a)(1); two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b); and three counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).

On March 11, 2014, T.R. pled guilty to two counts of endangering the welfare of a child. The State agreed to dismiss the remaining counts. During the plea colloquy, T.R. admitted to spanking his daughter hard enough to leave bruises. T.R. also admitted spanking his son "too hard[,]" causing him to cry out in pain. For these offenses, the Law Division judge imposed an aggregate three-year custodial sentence.

The State's petition for civil commitment also recounted that on July 2, 1995, a four-year-old child told her mother that T.R.,

2                                                          A-4986-14T2

then thirty years old, physically raped her.  Although T.R. admitted he was nude in front of the child, he maintained he did not touch her.  For that offense, T.R. was indicted on two counts of first-degree aggravated sexual assault and one count of second-degree endangering the welfare of a child.  In exchange for a recommended 364-day county jail sentence as a condition of probation and the dismissal of the remaining counts, T.R. pled guilty to an amended count of third-degree endangering the welfare of a child.  At the plea hearing, T.R. admitted that he exposed his genitals to the child and touched her breasts for sexual gratification.[1]  The judge imposed the recommended sentence.

The State's petition also details T.R.'s arrest for two sexual offenses that did not result in convictions.  T.R. also has a history of non-sexual offenses.

At the plenary commitment hearing, the State presented the testimony of Roger Harris, M.D., and Debra Roquet, Psy.D.[2]  T.R. offered no witnesses.

Following his two interviews with T.R., Dr. Harris concluded T.R. suffers from "pedophilic disorder, boys and girls, not limited

---

[1] During the plea colloquy, T.R. said he was born in 1965.  The State's petition states he was born in 1968.

[2] Dr. Harris was qualified as an expert psychiatrist and Dr. Roquet was qualified as an expert psychologist.

to incest." The doctor based this diagnosis on T.R.'s "repetitive pattern of . . . using children for his sexual gratification." Dr. Harris also diagnosed T.R. with antisocial personality disorder based on his "[f]ailure to plan ahead, his disregard for the rights of others[,]" and his failure to support his twelve to thirteen children from eight different women. Dr. Harris opined T.R. would be highly likely to sexually re-offend if not committed to the STU because of his pedophilic arousals, his antisocial behaviors, and his score of six on the Static-99R scale. Dr. Harris also noted T.R. steadfastly denied touching or committing any sexual offenses against any child. T.R. explained to Dr. Harris the allegations against him were false and motivated by his numerous ex-lovers' desires to "retaliat[e] against him."

Dr. Roquet diagnosed T.R. with pedophilic disorder and personality disorder with antisocial features. Dr. Roquet based her diagnosis on T.R.'s sexual arousal to children stemming from his two convictions and additional charges for sexual conduct involving four-year-old children to adolescents. Dr. Roquet also noted T.R. had committed sexual offenses with children between 1995 and 2011, well beyond the six-month to one-year timeframe required to diagnose pedophilic disorder under the DSM-5. Dr. Roquet scored T.R. a five on the Static-99R scale, rendering his likelihood to sexually recidivate moderately high. Finally, Dr.

A-4986-14T2

Roquet considered T.R.'s Megan's Law violations and his "very poor record of compliance with supervision" by having additional contact with children.

Dr. Roquet attributed T.R.'s antisocial behaviors to his personal irresponsibility with respect to his many sexual partners and children, his persistent reckless behavior towards others to gratify his own needs, his deceitfulness, and his lack of remorse or empathy. As he did with Dr. Harris, T.R. denied nearly every sexual allegation lodged against him, ascribing vindicate motives to his accusers — his children and former sex partners. Regarding the four-year-old's rape allegations, T.R. told Dr. Roquet he "kind of remembered touching her and taking off his pants," but believed, in his drunken state, that she was an adult woman.

Following the hearing, Judge Philip Freedman rendered an oral opinion civilly committing T.R. to the STU as a sexually violent predator. Judge Freedman found credible the doctors' uncontroverted testimony and determined that T.R. suffers from pedophilia and "a personality disorder, either . . . antisocial personality disorder or more technically personality disorder with antisocial features." Taken together, the court found these conditions make T.R. "have serious difficulty controlling his sexually violent behavior if he . . . [were] released, to such a

degree that he would be highly likely within the reasonably foreseeable future to . . . engage in acts of sexual violence."

Although the State did not seek a determination that T.R.'s 1996 conviction for endangering the welfare of a child should be considered a sexually violent offense, the court nevertheless determined such conviction qualified. In making that determination, the court relied on defendant's testimony at his October 18, 1996 plea hearing where he admitted to exposing his genitals to the four-year-old and touching her breasts for sexual gratification. Based on these admissions and the victim's statements contained in the police reports entered into evidence, Judge Freedman was "satisfied by clear and convincing evidence" that the offense should be considered a sexually violent offense under N.J.S.A. 30:4-27.26(b). For those reasons, the judge found the State had met its burden of proof that T.R. is in need of civil commitment for sex offender specific treatment. T.R. appealed from the implementing order.

On appeal, T.R. raises the following argument:

> THE STATE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT T.R. WAS SUBJECT TO COMMITMENT AS A SEXUALLY VIOLENT PREDATOR WHERE THE STATE FAILED TO SHOW THAT T.R. COMMITTED A SEXUALLY VIOLENT OFFENSE AND THAT HE SUFFERED FROM A MENTAL ABNORMALITY OR PERSONALITY DISORDER WHICH MADE HIM HIGHLY LIKELY TO RE-OFFEND IN THE REASONABLY FORESEEABLE FUTURE.

We affirm, substantially for the reasons expressed by Judge Freedman in the thorough oral opinion he delivered from the bench on June 3, 2015. We add only the following comments.

The SVPA authorizes "the State to involuntarily commit 'a person who has been convicted . . . of a sexually violent offense' who 'suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.'" In re Civil Commitment of R.F., 217 N.J. 152, 173 (citations omitted) (2014); N.J.S.A. 30:4-27.26. To secure an order for commitment, the State must prove by clear and convincing evidence: "(1) that the individual has been convicted of a sexually violent offense; (2) that he suffers from a mental abnormality or personality disorder; and (3) that as a result of his psychiatric abnormality or disorder, it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend[.]" R.F., supra, 217 N.J. at 173; N.J.S.A. 30:4-27.32(a). The decision to civilly commit an individual "is based on the individual's danger to self and others because of his or her present serious difficulty with control over dangerous sexual behavior." In re Commitment of W.Z., 173 N.J. 109, 132-33 (2002).

"The scope of appellate review of a commitment determination is extremely narrow." R.F., supra, 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)). We afford "special deference" to the expertise of judges who hear SVPA cases because they are generally "specialists" in that field. Ibid. (citing In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). A trial court's decision to commit an individual should be modified only when the record reveals "a clear mistake." Id. at 175. "The appropriate inquiry is to canvass the significant amount of expert testimony in the record and determine whether the lower court'[s] findings were clearly erroneous." D.C., supra, 146 N.J. at 58-59.

Applying those principles here, we are satisfied that Judge Freedman's findings are amply supported by substantial credible evidence in the record. State v. Locurto, 157 N.J. 463, 470-71 (1999).

We reject T.R.'s argument that the State failed to make an application to the trial court requesting a finding that he was convicted of a sexually violent offense as defined under the SVPA. The SVPA's definition of sexually violent offense includes "any offense for which the court makes a specific finding on the record that, based on the circumstances of the case, the person's offense should be considered a sexually violent offense." N.J.S.A. 30:4-

27.26(b). Judge Freedman properly determined that T.R.'s 1996 conviction for endangering the welfare of a child should be considered a sexually violent offense under this definition.[3]

In addition, T.R.'s arguments concerning the validity of the experts' opinions are likewise without merit. Although T.R. argues the experts improperly relied upon unreliable hearsay documents in formulating their opinions, "[a]n expert is permitted to rely on hearsay information in forming his opinion concerning the defendant's mental state." In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 612 (App. Div. 2003) (noting that the introduction of presentence reports was proper in a civil commitment hearing because "such evidence was of a type reasonably relied upon by mental experts in formulating their evaluations of an individual's mental condition), certif. denied, 179 N.J. 312 (2004). Here, the experts properly relied upon judgments of conviction, plea and sentencing transcripts, presentence reports, victims' statements, police reports, and mental status examinations, all of which are reasonably relied upon by experts evaluating an individual's mental condition.

---

[3] Nothing in the SVPA "suggests that the Attorney General may only seek commitment of a person" who has "recently committed a predicate offense." In re Commitment of P.Z.H., 377 N.J. Super. 458, 465 (App. Div. 2005).

T.R.'s remaining arguments are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION