# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1887-21

IN THE MATTER OF THE
CIVIL COMMITMENT OF R.T.,
SVP-573-10.

Submitted October 31, 2023 – Decided November 20, 2023

Before Judges Rose and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. SVP-573-10.

R.T., appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen Slocum, Deputy Attorney General, on the brief).

PER CURIAM

R.T. is a resident of the Special Treatment Unit (STU), the secure custodial facility designated for the treatment of persons in need of commitment under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38.

Self-represented, he appeals from a February 9, 2022 Law Division judgment continuing his commitment. Distilled to their essence, R.T.'s overlapping arguments challenge the trial judge's credibility and factual findings. Having considered R.T.'s contentions in view of the record and the governing legal principles, we affirm.

We need not recount in substantial detail R.T.'s extensive criminal history, which we set forth in our opinion affirming the January 15, 2014 initial judgment of commitment. In re Civ. Commitment of R.T., No. A-2521-13 (App. Div. Feb. 19, 2016) (slip op. at 1-5). In summary, R.T.'s criminal history includes several out-of-state arrests and convictions for sexually related offenses, commencing at age sixteen with a rape charge and subsequent adjudication in Pennsylvania. Id. at 2. As an adult R.T. was convicted of sexually related offenses in California in 1984 and 1999, and Pennsylvania in 2005. Id. at 2, 5. R.T. was also convicted and charged with multiple non-sexual offenses in California, Pennsylvania, and Nevada, including failure to register as a sex offender, vehicular manslaughter, assault, fraud, drug, and weapons offenses. Id. at 2.

Eventually R.T. was extradited to New Jersey on a 1997 warrant for non-sexually related offenses. Id. at 5. After R.T. pled guilty to third-degree theft, he was sentenced to a four-year prison term. Ibid. On May 3, 2010, the State

2

filed a petition for civil commitment under the SVPA. Ibid. R.T. thereafter challenged the trial court's jurisdiction, contending "he had never been charged with or convicted of any sexual offense in New Jersey." Id. at 6. Following protracted litigation concerning jurisdiction and other issues, the trial court held a hearing and thereafter entered the initial January 15, 2014 judgment, committing R.T. to the STU.[1] Id. at 9-10.

After we affirmed R.T.'s initial commitment, his residency at the STU was marked by years of litigation concerning his placement. See e.g., In re Civ. Commitment of R.T., No. A-4263-18 (App. Div. Mar. 27, 2020) (slip op. at 3) (affirming the trial court's denial of R.T.'s motion to change his treatment refusal status in the STU).[2] In our decision, we noted "R.T. sought various relief in the Law Division, but he did not challenge his continued commitment." Id. at 3.

---

[1] As we stated in our decision affirming R.T.'s initial commitment, "[t]he SVPA 'applies whether the offense was committed in New Jersey . . . or another State.'" R.T., slip op. at 13 (second alteration in original) (quoting In re Civ. Commitment of P.Z.H., 377 N.J. Super. 458, 463-64 (App. Div. 2005)). See also N.J.S.A. 30:4-27.26.

[2] R.T. also filed a civil rights complaint in federal court against certain STU staff, a public defender, and a deputy attorney general asserting, among other claims, that several psychologists "retaliated against him for filing the grievances by prolonging his treatment." [R.T.] v. Main, No. 20-2846, 2021 U.S. App. LEXIS 20273, at *2 (3d Cir. July 8, 2021) (summarily affirming the dismissal of most claims and judgment for defendants on the remaining claims).

A-1887-21

Ultimately, the present review hearing was conducted by Judge Bradford M. Bury over the course of seven non-consecutive days between September 15, 2021, and January 25, 2022. The State presented the expert testimony of psychiatrist Dr. Nicole Dorio, D.O., and psychologist Dr. Paul Dudek, Ph.D., a member of the STU's Treatment Progress Review Committee (TPRC). R.T. represented himself at the hearing with the assistance of standby counsel. R.T. did not testify but called his own expert in psychology, Dr. Ronald Silikovitz, Ph.D., and the STU's medical director, Dr. Sandra Connolly, who testified as a fact witness. The judge also considered the "plethora of documents admitted into evidence" by both parties, including the experts' reports, the STU's treatment records, and R.T.'s self-published book.

Immediately following the parties' closing statements, Judge Bury issued a preliminary decision from the bench, announcing his intention to continue R.T.'s commitment at the STU with "a short review period." Shortly thereafter, the judge issued a comprehensive oral decision squarely addressing the evidence adduced at the hearing in view of the governing law. Citing the testimony of each witness seriatim, the judge made detailed credibility and factual findings.

Pertinent to the issues raised on appeal, the judge noted Dr. Dorio had interviewed R.T. four times prior to the hearing and testified about his lengthy

criminal history. But the judge was not fully persuaded by Dr. Dorio's opinion that because R.T. had been placed on treatment refusal status multiple times and failed to engage adequately with his treatment to enable him to progress, R.T. "[wa]s essentially an untreated sex offender." Judge Bury explained:

> I found [Dr. Dorio] to be a credible witness with regard to the ultimate conclusion of whether or not [R.T.] is presently highly likely to sexually reoffend, that her factual foundation in support of the same is clearly present in the record, and also her opinion that he's not highly likely to comply with terms and conditions of a conditional discharge plan now. . . .
>
> I did not find [Dr. Dorio] credible in certain areas with regard to giving [R.T.] his due, and his appropriate credit, . . . and complimenting him, so-to-speak, with regard to his significant areas of progress, although he still has a ways to go.

Turning to Dr. Dudek's testimony, the judge noted the doctor diagnosed R.T. with "antisocial personality disorder with narcissistic features . . . other specified paraphilic disorder non-consent, and sexual sadism disorder." Crediting Dr. Dudek's testimony, the judge was persuaded by his "ultimate conclusions . . . that [R.T.] is presently highly likely to sexually reoffend if he were to be discharged into [the] community, and that he is not highly likely to comply with his terms and conditions of treatment."

A-1887-21

Conversely, Judge Bury wholly discredited Dr. Silikovitz's testimony, highlighting R.T.'s religious commitment is not a relevant factor regarding a sexual predator's likelihood to reoffend. The judge stated: "I find Dr. Silikovitz's opinion has to be rejected wholesale because he doesn't address . . . the core requirement[] under the statute" of whether the individual has mental abnormality or personality disorders.

Finally, the judge noted R.T. called Dr. Connolly "to testify about his medical chart and his colorectal cancer treatments" to demonstrate "he is unable to obtain an erection as a result of the surgical procedure that occurred." Although the judge found Dr. Connolly's testimony credible, he concluded "her testimony and the medical records do not support by a clear and convincing evidence standard that [R.T.], in fact, is not able to obtain an erection." Instead, the judge noted as R.T. continues treatment, the STU's diagnostic testing – including an "arousal polygraph" – will determine whether he "is able to become aroused."

Concluding R.T.'s commitment should continue, Judge Bury found "clear and convincing evidence that [R.T.] suffers from a mental abnormality or personality disorder that affects him emotionally, cognitively, or volitionally to such a degree that he is predisposed to commit acts of sexual violence." Further,

6

"[i]f released, [R.T.] would have serious difficulty controlling his sexually violent behavior to such a degree that he will be highly likely within the reasonably foreseeable future to engage in acts of sexual violence."

In reaching his decision, the judge considered the possibility of a conditional discharge with conditions "to reduce [R.T.]'s dangerousness below the level of committability." However, the judge found neither R.T. nor any of the experts presented any realistic conditions during the hearing. Nonetheless, the judge recognized R.T. was "promoted to Phase 2" after he was removed from treatment refusal status. In view of R.T.'s progress, the judge "order[ed] that by the next expedited review hearing date, so long as he continues to . . . meaningfully engage in treatment, he shall move to Phase 3A." The judge elaborated:

> [R.T.] offended repeatedly, both as a juvenile and then as an adult, even after having been sanctioned. So, the propensity for him to reoffend is high.
>
> And hopefully, as he continues to progress throughout his treatment, he's going to be able to bring that down to below the standard of highly likely, and become less than highly likely.
>
> But at the moment, there's really no rational basis or means upon which the court at this juncture could fashion a discharge plan with sufficient conditions in order to ensure the safety of the community and to prevent [R.T.] from reoffending.

A-1887-21

But the court is confident if . . . [R.T.], continues on his positive upward trajectory with regard to his treatment, he will be able to succeed one day and to be discharged safely into the community where he will not be at risk . . . .

The judge issued a memorializing order continuing R.T.'s commitment and scheduling the next review hearing on September 7, 2022.[3] This appeal followed.

Well-established principles guide our review. A person who has committed a sexually violent offense may be confined only if suffering from an abnormality that causes serious difficulty in controlling sexually violent behavior such that commission of a sexually violent offense is highly likely without confinement "in a secure facility for control, care and treatment." In re Commitment of W.Z., 173 N.J. 109, 120, 127 (2002) (citing N.J.S.A. 30:4-27.26). Annual review hearings to determine whether the person remains in need of commitment despite treatment are also required. N.J.S.A. 30:4-27.35; N.J.S.A. 30:4-27.32(a). An order of continued commitment under the SVPA, like an initial order, must be based on "clear and convincing evidence that an

---

[3] We have been advised that R.T. waived the September 7, 2022 review hearing pending this appeal and, at his request, no subsequent review hearings have occurred.

individual who has been convicted of a sexually violent offense, suffers from a mental abnormality or personality disorder, and presently has serious difficulty controlling harmful sexually violent behavior such that it is highly likely the individual will reoffend" if not committed. In re Civ. Commitment of G.G.N., 372 N.J. Super. 42, 46-47 (App. Div. 2004) (citing W.Z., 173 N.J. at 120, 132); see also In re Civ. Commitment of R.F., 217 N.J. 152, 173 (2014); N.J.S.A. 30:4-27.26; N.J.S.A. 30:4-27.32; N.J.S.A. 30:4-27.35. "[O]nce the legal standard for commitment no longer exists, the committee is subject to release." In re Civ. Commitment of E.D., 353 N.J. Super. 450, 455 (App. Div. 2002); see also W.Z., 173 N.J. at 133; N.J.S.A. 30:4-27.32; N.J.S.A. 30:4-27.35.

"The scope of appellate review of a commitment determination is extremely narrow." R.F., 217 N.J. at 174 (quoting In re D.C., 146 N.J. 31, 58 (1996)). Because trial judges who hear these matters "are specialists in the [SVPA], . . . we must give their expertise in the subject special deference." In re Civ. Commitment of R.Z.B., 392 N.J. Super. 22, 36 (App. Div. 2007) (quoting In re Civ. Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). Modification is only proper on appeal when "the record reveals a clear abuse of discretion." Ibid. "The appropriate inquiry is to canvass the . . . expert testimony in the record and determine whether the [commitment judge's] findings were

clearly erroneous." Ibid. (alterations in original) (quoting D.C., 146 N.J. at 58-59). We will not disturb the judge's findings if they are supported by sufficient credible evidence in the record. See R.F., 217 N.J. at 175.

We are satisfied from our review of the record that Judge Bury's findings are supported by substantial credible evidence. Based on the expert testimony he deemed credible, the judge determined there existed clear and convincing evidence that R.T.'s disorders and past behavior demonstrated he was highly likely to engage in acts of sexual violence unless confined. Recognizing R.T.'s progress, the judge scheduled an expedited hearing to afford R.T. the opportunity to demonstrate compliance with treatment with an anticipated goal of increasing to Phase 3A. We have been offered no principled reason for second-guessing the experienced judge's findings and conclusions.

To the extent not addressed, R.T.'s remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-1887-21